# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| DARIU KIRK, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN CRUISE LINES, INC.,<br><br>Defendant. | C.A. NO.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

### I.   PRELIMINARY STATEMENT

1. This is a consumer class action under federal law brought on behalf of applicants for employment, transfer, and/or promotion with American Cruise Lines, Inc. ("ACL or "Defendant").

2. ACL systematically violates the rights of job applicants about whom it obtains consumer reports (also called "background checks") provided by section 1681b(b)(3) of the Fair Credit Reporting Act ("FCRA") by using consumer reports to take adverse employment actions without, *beforehand*, providing the person who is the subject of the report sufficient and timely notification and a copy of the report and a summary of rights under the FCRA.

3. These failures leave applicants without any meaningful opportunity to correct any errors on the report or to discuss the content of the report with ACL.

4. The FCRA regulates the use of "consumer reports" for employment purposes, commonly called "background reports." Congress included in the statutory scheme a series of due-

1

process-like protections that impose strict procedural rules on "users of consumer reports," such as ACL. This action involves ACL's systematic violations of several of those important rules

5.      Plaintiff Dariu Kirk was denied employment with ACL based upon a standardized background screen conducted by Sterling Infosystems, Inc. "Sterling."

6.      Upon information and belief, ACL contracts with Sterling to perform a standardized background screen on all consumers who apply to ACL for hire, promotion, or transfer.

7.      In March 2023, Mr. Kirk sought employment with ACL. After the application and interview process, ACL gave him a conditional offer of employment contingent on passing a background check. ACL then ordered a consumer report about Mr. Kirk from Sterling. Devastatingly for Mr. Kirk, the background check company failed to include in Mr. Kirk's consumer report a pardon that Mr. Kirk had received.

8.      In violation of the FCRA, ACL willfully and negligently failed to comply with the FCRA's mandatory pre-adverse action notification requirement, and failed to provide a copy of the inaccurate background report it obtained from Sterling before the adverse action occurred, as required by 15 U.S.C. § 1681b(b)(3). Every year, individuals who have applied to ACL for employment have been similarly aggrieved by the same violation of 15 U.S.C. § 1681b(b)(3).

9.      Pursuant to 15 U.S.C. §§ 1681n and 1681o, Plaintiff seeks monetary relief for himself and classes of similarly situated employment applicants for whom ACL failed to comply with FCRA section 1681b(b)(3)'s pre-adverse action notification requirements.

## II.     JURISDICTION & VENUE

10.     Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

11. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

### III. PARTIES

12. Plaintiff is an adult individual who resides in Wisconsin.

13. Defendant is a Delaware corporation that regularly conducts business in the State of Connecticut. It has a principal place of business in Guilford, Connecticut.

### IV. FACTUAL ALLEGATIONS

#### A. ACL's Use of Sterling's Screening Services

14. Sterling is a consumer reporting agency which provides "consumer reports," as defined by 15 U.S.C. § 1681a(d)(1)(B), background and employment screening services, and decision-making intelligence to prospective employers.

15. Sterling investigates and reviews public record and private databases and assembles and/or maintains consumer files which contain public record information concerning, among other things, the alleged criminal record history of individuals.

16. From its files, Sterling sells consumer reports to potential employers (such as ACL) wishing to review the criminal record history, or lack thereof, of various job applicants or employees.

17. In addition to providing background reports, Sterling offers to its employment screening customers an enhanced service where, in addition to creating a background report about an applicant or employee, Sterling will also review the report to determine whether it meets the employer's hiring criteria. Under this service, the employer develops a "matrix" together with Sterling which establishes the records that will disqualify the applicant or employee and lead to an adverse action if they appear on a background report. Sterling then applies these standards as part

of the creation of the report, delivering a "score" or "flag" on the face of the report indicating whether the candidate is eligible or ineligible for employment. This type of enhanced background screening service is known in the background screening industry as "adjudication."

18. The adjudication service is attractive to Sterling's customers such as ACL who are constantly hiring and promoting in high volumes because it provides the customer with a remote, outsourced tool to make employment decisions rapidly.

19. Sterling offers customers the possibility of using its screening service both to screen applicants for employment, and current employees either on a recurring basis, or in connection with a promotion or transfer to a different role.

20. ACL used and/or continues to use Sterling's screening services to conduct background checks on applicants for employment and employees.

21. The background reports resulting from these services are obtained by and delivered to ACL.

22. Under the FCRA, any "person" using a consumer report, such as ACL, who intends to take an "adverse action" on a job application "based in whole or in part" on information obtained from the consumer report must provide notice of that fact to the consumer-applicant, and must include with the notice a copy of the consumer report and a notice of the consumer's dispute rights under the FCRA, before taking the adverse action. 15 U.S.C. § 1681b(b)(3)(A); *see also Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 633-35 (D. Or. 2015) (certifying 1681b(b)(3) claims of class of applicants for placement through a staffing agency); *Goode v. LexisNexis Risk & Info. Analytics*, 848 F. Supp. 2d 532, 542 (E.D. Pa. 2012) (more than one business can be a user of a single background report; "Under the FCRA, 'person' means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or

4

agency, or other entity. § 1681a(b). Thus, defendant is a person and must comply with § 1681b(b)(3)(A).").

23. There is longstanding regulatory guidance for employers making clear their obligations and the protections afforded to job applicants under the FCRA. The Federal Trade Commission ("FTC") has long held that Section 604(b)(3)(a) [15 U.S.C. § 1681b(b)(3)(A)] "requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken. Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action. Indeed, this is precisely the situation where it is important that the consumer be informed of the negative information in case the report is inaccurate or incomplete." See Federal Trade Commission letter dated June 9, 1998 to A. Michael Rosen, Esq.

24. A primary reason that Congress required that a person intending to take an adverse action based on information in a consumer report provide the report to the consumer before taking the adverse action is so the consumer has time to review the report and dispute information that may be inaccurate or discuss the report with the prospective employer before adverse action is taken. See Federal Trade Commission letter dated December 18, 1997 to Harold R. Hawkey, Esq. ("[T]he clear purpose of the provision to allow consumers to discuss reports with employers or otherwise respond before adverse action is taken.").

25. The reasons for the "pre-adverse action notice" requirement with regard to employment situations are to alert the job applicant that he is about to experience an adverse action, such as a rejection, based on the content of a report, and to provide him or her an opportunity to

challenge the accuracy or relevancy of the information with the consumer reporting agency or the user before that job prospect or job is lost.

26. Pursuant to its standardized procedures, ACL does not provide job applicants with a copy of their consumer reports or a statement of their FCRA rights before it takes adverse action against them based upon the information in such reports, despite being required to do so by section 1681b(b)(3)(A) of the FCRA.

27. The FCRA statutory text, the FTC opinions and the cases cited constitute significant authority that existed during the time Defendant failed to comply with the pre-adverse action requirements of 15 U.S.C. § 1681b(b)(3)(A)

**B. The Experience of Plaintiff Dariu Kirk**

28. In March 2022, Mr. Kirk received a gubernatorial pardon in Wisconsin for a crime for which he had been convicted.

29. About a year later, in March 2023, Mr. Kirk applied for employment with Defendant.

30. After completing the employment application and interview, on March 23, 2023 Defendant sent Mr. Kirk an email extending him "an offer of employment, contingent upon successful completion of your pre-employment background check and drug test."

31. On or about March 23, 2023, Defendant obtained a consumer report about Mr. Kirk from Sterling Infosystems ("Sterling").

32. Sterling reported in its consumer report that Mr. Kirk was guilty of a number of crimes. But Sterling failed to report that on March 22, 2022, Mr. Kirk had received a gubernatorial pardon for each of them.

33. Nonetheless, on March 27, 2023, Defendant emailed Mr. Kirk:

6

> Thank you for your interest in American Cruise Lines. We appreciate you taking the time to interview with us. This offer was contingent on the results of your pre-employment background check and drug test.
>
> After reviewing your results, we have decided to pursue another candidate for the position and will no longer be extending an offer to you.
>
> We appreciate your interest in our company and wish you success in your future endeavors.

34. At that point, Defendant had not yet provided Mr. Kirk with both a copy of the consumer report and a description, in writing, of his rights under the FCRA, as required by statute.

35. Once Mr. Kirk received the March 27, 2023 email, he emailed Defendant the same day: "I was on my way to do my drug test and saw the offer was rescinded my [sp] I ask what was the reasoning behind the offer being retracted?"

36. Less than two hours later, one of Defendant's Senior Talent Coordinators emailed Mr. Kirk: "After reviewing your background screening, we have made the decision not to move forward with your hire at American Cruise Lines."

37. Because he hadn't received any "background screening," Mr. Kirk responded a few minutes later and asked Defendant for a copy of it.

38. Two days later on March 29, 2023, still having not received a copy of the background screening report from ACL, Mr. Kirk contacted Sterling directly to request a copy of the report.

39. Sterling responded the same day with an email that contained a link that allowed him to access his consumer report for the first time. It was at this time that Mr. Kirk discovered Sterling's failure to report his gubernatorial pardon and the inaccurate information in his report.

7

40. Defendant willfully and negligently failed to comply with the FCRA's mandatory pre-adverse action notification requirement, and failed to provide a copy of the inaccurate background report it obtained from Sterling before taking adverse action against Mr. Kirk.

41. As a result, Mr. Kirk was denied the opportunity to discuss the contents of the report and dispute the inaccurate information with Sterling before Defendant took an adverse employment action against him.

42. As a result of Defendant's conduct described above, Mr. Kirk has suffered damages in the form of financial and reputational harm, loss of employment opportunity, and emotional distress.

## V.   CLASS ALLEGATIONS

43. Plaintiff brings this action individually and pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class:

> All natural persons residing within the United States and its Territories about whom, (i) beginning five (5) years prior to the filing of this Complaint and continuing through the conclusion of this action, (ii) were the subject of a consumer report used by Defendant for employment purposes, (iii) were the subject of an adverse employment action by Defendant, and (iv) were not provided with a copy of the report and/or a written summary of their rights under the FCRA at least five (5) business days prior to the adverse action.

44. Plaintiff reserves the right to amend the definition of the Class based on discovery or legal developments.

45. **Numerosity. Fed. R. Civ. P. 23(a)(1).** The members of the Class are so numerous that joinder of all is impractical. Upon information and belief, the number of job applicants and employees harmed by Defendant's practices are more numerous than what could be addressed by joinder, and those persons' names and addresses are identifiable through documents or other information maintained by Defendant.

8

46. **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Class, and predominate over the questions affecting only individuals. The common legal and factual questions include, among others: (1) whether ACL used consumer reports for employment purposes to take adverse action against consumers without first providing them with notice, a copy of the report, and a summary of FCRA rights at least five business days prior to the adverse action; and (2) whether ACL acted willfully or negligently.

47. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of each Class Member. Plaintiff has the same claims for relief that he seeks for absent Class Members.

48. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Class because his interests are aligned with, and are not antagonistic to, the interests of the members of the Class he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of members of the Class.

49. **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and

increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## VI.   CAUSES OF ACTION

### COUNT I
### FCRA § 1681b(b)(3) – Class Claim

65. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

66. The background or consumer reports that Defendant purchases regarding employment applicants are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

67. The FCRA provides that any person "using a consumer report for employment purposes" who intends to take any "adverse action based in whole or in part on the report," must provide the consumer a written description of the consumer's rights under the FCRA, as prescribed by the Federal Trade Commission, before taking such adverse action. 15 U.S.C. § 1681b(b)(3)(A).

68. For purposes of this requirement, an "adverse action" includes "any . . . decision . . . that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).

69. Defendant is a "person" that regularly uses consumer reports for employment purposes.

70. The FCRA requires Defendant, as a user of consumer reports for employment purposes, before taking adverse action based in whole or in part on the report, to provide to the consumer to whom the report relates, a copy of the report and a written description of the consumer's rights under the FCRA. 15 U.S.C. § 1681b(b)(3)(A)(i), (ii).

71. Defendant willfully violated section 1681b(b)(3) of the FCRA by failing to provide to the consumer about whom the report relates a copy of the report and a written description of the consumer's rights under the FCRA a sufficient time before it took adverse action based in whole or in part on the consumer report.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. An order certifying the case as a class action on behalf of the proposed Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

2. Actual, statutory and punitive damages to be determined by the jury;

3. Attorneys' fees;

4. Costs of the action;

5. Such other relief as the Court deems just and proper

## TRIAL BY JURY

Plaintiff hereby requests a trial by jury on those causes of action where a trial by jury is allowed by law.

DATE: August 8, 2023

BY /s/

Sarah Poriss, Esq.
777 Farmington Avenue
West Hartford, CT 06119
T: 860-233-0336
F: 866-424-4880
E: sarahporiss@prodigy.net
Fed. Bar No. Ct24372

**Weiner & Sand LLC**
Andrew L. Weiner
Jeffrey B. Sand*
800 Battery Avenue SE
Suite 100
Atlanta, GA 30339
T: 404.205.5029
T: 404.254.0842
F: 866.800.1482
E: aw@wsjustice.com
E: js@wsjustice.com

**Francis Mailman Soumilas, P.C.**
James A. Francis*
Lauren KW Brennan*
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: 215.735.8600
F: 215.940.8000
E: jfrancis@consumerlawfirm.com
E: lbrennan@consumerlawfirm.com

*Pro hac vice* applications forthcoming

*Attorneys for Plaintiff*

**Weiner & Sand LLC**
Andrew L. Weiner
Jeffrey B. Sand*
800 Battery Avenue SE
Suite 100
Atlanta, GA 30339
T: 404.205.5029
T: 404.254.0842
F: 866.800.1482
E: aw@wsjustice.com
E: js@wsjustice.com


**Francis Mailman Soumilas, P.C.**
James A. Francis*
Lauren KW Brennan*
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: 215.735.8600
F: 215.940.8000
E: jfrancis@consumerlawfirm.com
E: lbrennan@consumerlawfirm.com


**Pro hac vice* applications forthcoming

*Attorneys for Plaintiff*