## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

---

DARIU KIRK, *on behalf of himself and all*
*others similarly situated*,
        *Plaintiff*,

        v.

AMERICAN CRUISE LINES, INC.,
        *Defendant.*

No. 3:23-cv-1057 (VAB)

---

### RULING AND ORDER ON MOTION FOR CLASS CERTIFICATION

Dariu Kirk ("Plaintiff"), on behalf of himself and all other similarly situated, has filed a class action Complaint alleging that American Cruise Lines ("Defendant") violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(3), by failing to provide written notice of job applicants' rights under the FCRA and failing to provide a copy of the background check report before making an adverse decision ("Count One"). Compl., ECF No. 1 (Aug. 8, 2023) ("Compl.").

Mr. Kirk has filed a motion to certify class.

American Cruise Lines opposes that motion.

For the following reasons, the motion for class certification is **DENIED.**

To the extent Mr. Kirk can cure the deficiencies identified in this Ruling and Order, or wishes to move for certification with a modified class definition, he may file a renewed motion for class certification by **August 1, 2025**.

1

## I.    FACTUAL AND PROCEDURAL HISTORY

### A.  Factual Background

American Cruise Lines owns and operates cruise ships throughout North America. Memo. in Supp. at 4, ECF No. 58-1 (Dec. 13, 2024) ("Memo. in Supp.").

In August of 2021, American Cruise Lines instituted a policy requiring all hired applicants to pass criminal background checks before beginning employment. *Id.* at 4–5.

American Cruise Lines orders these background checks after candidates have accepted a job offer, but before they start employment. *Id.* at 5. Once a candidate accepts a position, American Cruise Lines initiates the background check through Sterling, a background check company, who sends an e-mail to the candidate requesting information for the background check. *Id.*

Sterling sends the reports from the background check directly to American Cruise Lines. *Id.* The background check report is scored as either "Complete" or "Consider." *Id.* "Consider" is used to indicate a criminal record. *Id.* When American Cruise Line receives a report with a "Consider" score, a department of around ten employees reviews the report to determine whether the criminal record of the applicant disqualifies them from employment with American Cruise Lines. *Id.*

From August 2021 to October 2023, if American Cruise Lines decided not to employ a candidate based on a background check report, the company would send a letter to the candidate informing them that the job offer had been rescinded based on the background check. *Id.* at 6. This letter did not contain a copy of the background check report or a notice indicating the candidate's rights under the Fair Credit Reporting Act ("FCRA"). *Id.*

On March 23, 2023, Mr. Kirk received an offer of employment from American Cruise Lines, contingent on passing a background check and drug test, which he accepted. *Id.* at 7.

Mr. Kirk's background check report was scored as "Consider." *Id.* The report included a conviction for felony robbery and "several driving-related offenses." *Id.* Mr. Kirk alleges that the background check was "inaccurate and incomplete" because it omitted that Mr. Kirk had been given a gubernatorial pardon for the robbery conviction. *Id.*

On March 27, 2023, American Cruise Lines informed Mr. Kirk that his offer was rescinded after review of his background check report. *Id.*; Memo. in Supp. of Obj. at 3–4, ECF No. 61-1 (Jan. 31, 2025) ("Memo. in Opp.")

After receiving the letter terminating his offer, Mr. Kirk requested an explanation for the termination of his offer. Memo. in Supp. at 8. In response, American Cruise Lines informed him only that the decision had been made "[a]fter reviewing your background screening." *Id.* (quoting Exhibit 11, ECF No. 58–13 (Dec. 13, 2024) (e-mails between Mr. Kirk and American Cruise Lines talent coordinator)). Mr. Kirk then requested a copy of the background check report and for American Cruise Line's "background policy." *Id.* American Cruise Lines allegedly did not respond to these requests. *Id.*

On March 29, 2023, Mr. Kirk received an e-mail from Sterling that the background check had been completed and a separate e-mail providing a copy of the report. Memo. in Opp. at 4.

On March 31, 2023, Mr. Kirk initiated a dispute with Sterling, stating that the background check report did not include information on his gubernatorial pardon. *Id.*

On April 3, 2023, Sterling updated Mr. Kirk's background check report to include a note saying that he had been pardoned. *Id.*

### B.  Procedural History

On August 8, 2023, Mr. Kirk filed his class action Complaint. Compl.

On November 20, 2023, American Cruise Lines filed an Answer to the Complaint. ECF

No. 25 (Nov. 20, 2023).

On December 13, 2024, Mr. Kirk filed a motion to certify class and an accompanying

memorandum in support. Mot. to Certify Class, ECF No. 58 (Dec. 13, 2024) ("Mot."); Memo. in

Supp.

On January 31, 2025, American Cruise Lines filed an objection to the motion to certify

class and an accompanying memorandum of support. Obj. re Mot. to Certify Class, ECF No. 61

(Jan. 31, 2025) ("Obj."); Memo. in Supp. of Obj., ECF No. 61-1 (Jan. 31, 2025) ("Memo. in

Opp.").

On March 3, 2025, Mr. Kirk filed a reply to the objection. Reply to Response, ECF No.

64 (Mar. 3, 2025) ("Reply").

## II.     STANDARD OF REVIEW

At the class certification stage, courts generally accept the factual allegations of the

complaint as true. *Richards v. FleetBoston Fin. Corp.*, 235 F.R.D. 165, 168 (D. Conn. 2006)

(citing *Shelter Realty Corp. v. Allied Maint. Corp.*, 574 F.2d 656, 661 n. 15 (2d Cir. 1978)). To

be certified, a class must satisfy each of the Rule 23(a) prerequisites:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there
> are questions of law or fact common to the class; (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the class; and (4) the
> representative parties will fairly and adequately protect the interests of the class.

*Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (citing Fed. R. Civ. P.

23(a)). "In addition to satisfying the requirements set forth in Federal Rule of Civil Procedure

23(a), a plaintiff seeking class certification must establish one of the bases for certification

identified in Federal Rule of Civil Procedure 23(b)." *Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017) (citing Fed. R. Civ. P. 23(b)).

To reach these class certification questions, courts must resolve some factual disputes. Although the Supreme Court has required district courts to engage in a rigorous analysis of the facts, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351–52 (2011)). Courts, however, "must resolve material factual disputes relevant to each Rule 23 requirement." *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010).

The court has an independent obligation to determine whether the proposed class satisfies the requirements for class certification. *See Callari v. Blackman Plumbing Supply, Inc.*, 153 F. Supp. 3d 590, 593 (E.D.N.Y. 2015) ("[T]he [district] [c]ourt had an independent obligation to consider the evidence in the record and assess whether the proposed class met the Rule 23(a) requirements." (citing *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008))); *In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16-CV-740 (JMF), 2020 WL 4694172, at *6 (S.D.N.Y. Aug. 13, 2020) ("[T]he Court has an independent obligation to ensure that the standards for class certification are met—and a responsibility to ensure that certification would not harm absent class members, whose interests may not be aligned with those of the named Plaintiffs or Defendants.").

## III.    DISCUSSION

Mr. Kirk seeks to define the class as:

> All natural persons residing within the United States and its
> Territories about whom, (i) beginning five (5) years prior to the
> filing of this Complaint and continuing through the conclusion of

5

> this action, (ii) were the subject of a consumer report used by
> Defendant for employment purposes, (iii) were the subject of an
> adverse employment action by Defendant, and (iv) were not
> provided with a copy of the report and/or a written summary of
> their rights under the FCRA at least five (5) business days prior to
> the adverse action.

Memo. in Supp. at 9.

American Cruise Lines argues that Mr. Kirk lacks Article III standing to bring his suit, and thus class certification must fail. *See* Memo. in Opp. 10–22. American Cruise Lines also argues that the proposed class definition is improper because (1) a two-year statute of limitation applies so the class cannot include individuals five years before the filing of the Complaint; (2) there is no requirement under the FCRA for a notice to be provided five-years prior to the adverse action; and (3) to fulfill the requirements of Rule 23, class members must have had an inaccuracy on their background check reports. *Id.* at 7–9.

The Court will begin with the challenge to standing, and then address the proposed class definition and requirements under Rule 23.

## A. Standing

Article III of the Constitution provides federal courts with power that "extends only to 'Cases' and 'Controversies.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting Art. III § 2). The doctrine of standing is "rooted in the traditional understanding of a case or controversy." *Id.* at 338. To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Kearns v. Cuomo*, 981 F.3d 200, 207 (2d Cir. 2020) (quoting *Spokeo, Inc.*, 578 U.S. 330 at 338). In a class action the standing requirement is satisfied if, "for every named defendant[,] . . . at least one named plaintiff [] can assert a claim directly against that defendant." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,

693 F.3d 145, 159 (2d Cir. 2012) (quoting *Central States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 241 (2d Cir. 2007)).

American Cruise Lines argues that Mr. Kirk lacks standing to sue under Article III because he has no concrete injury and has no way to recover damages under the FCRA. *See* Memo. in Opp. at 10–22. Specifically, American Cruise Lines argues that Mr. Kirk's allegations amount only to a violation of the FCRA's procedural requirements which is not a cognizable "injury" for the purposes of Article III standing. *Id.* at 10–15. American Cruise Lines relies on *Schumacher v. SC Data Ctr., Inc.*, where the Eighth Circuit held that the plaintiff had not demonstrated an injury in fact and thus lacked standing to pursue her claim alleging that a prospective employer violated the FCRA by taking an adverse employment action prior to her receipt of an accurate background check report. 33 F.4th 504, 512 (8th Cir. 2022).

American Cruise Lines additionally argues that Mr. Kirk cannot recover, as he has suffered no actual damages, which are recoverable under the FCRA for negligent violations, and he cannot demonstrate that American Cruise Lines willfully violated the FCRA, which is necessary for the recovery of punitive and statutory damages. *Id.* at 14–22.

In reply, Mr. Kirk argues that he has suffered a concrete injury by not receiving the background check report in advance of the adverse action, specifically that this "prevented [him and other class members] from vindicating their FCRA rights to make timely disputes, [] make timely and informed decisions about their employment options, and [] discuss the contents of reports with Defendant pursuant to Defendant's 'case-by-case' evaluation process . . . ." Reply at 9. Mr. Kirk relies on *Long v. Southeastern Pennsylvania Transp. Authority*, 903 F.3d 312 (3rd Cir. 2018) and *Robertson v. Allied Solutions, LLC*, 902 F.3d 690 (7th Cir. 2018) where Courts of Appeals found that plaintiffs had standing for claims alleging that prospective employers did not

provide a copy of the background check report before taking adverse actions. *See Long*, 903 F.3d at 324–325; *Robertson*, 902 F.3d at 697.

Mr. Kirk also argues that the question of whether American Cruise Lines was "willful" is one that will be addressed during the course of litigation as it is a common and predominating question for the class. *Id.* at 15.

The Court agrees, in part, and will address each argument in turn.

### 1. Injury

While "Congress may enact legal prohibitions and obligations[,] . . . under article III, an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue." *Id.* (emphasis in original).

 In the Second Circuit, "*Transunion* is the touchstone for determining . . . a concrete injury." *Bohnak v. Marsh McLennan Companies, Inc.*, 79 F.4th 276, 283 (2d Cir. 2023). A "concrete" injury is one that is "real, not abstract." *Ramirez*, 594 U.S. at 424 (quoting *Spokeo, Inc.*, 578 U.S. at 340). To determine whether an injury is "concrete," courts look to "whether the[] injur[y] b[ears] a 'close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts.'" *Bohnak*, 79 F.4[th] at 284 (quoting *Ramirez*, 594 U.S. at 424); *see also Ramirez*, 594 U.S. at 424 ("That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury."). Tangible harms, such as physical and monetary harms, "readily qualify as concrete injuries." *Ramirez*, 594 U.S. at 425. Intangible harms, such as "reputational harms, disclosure of private information, and intrusion upon seclusion," can also satisfy the concrete injury inquiry. *Id.*

Mr. Kirk and all proposed class members have clearly alleged a statutory injury: that American Cruise Lines violated 15 U.S.C. 1681b(b)(3) by failing to provide them with a copy of a "consumer report" and notice of his rights under the FCRA prior to making an adverse employment action. *See Compl.* ¶¶ 65–71.

Mr. Kirk states that, as a result of this violation, he "has suffered damages in the form of financial harm and reputation harm, loss of employment opportunity, and emotional distress." Compl. ¶ 42. Additionally, Mr. Kirk states that all class members were "prevented [] from vindicating their FCRA rights to make timely disputes, to make timely and informed decisions about their employment options, and to discuss the contents of reports with Defendant." Reply at 9.

To the extent Mr. Kirk alleges that he suffered monetary harm through the loss of an employment opportunity and difficulty making "informed decisions about [his] employment," Reply at 9, this alleged monetary injury is "concrete" for the purposes of Article III. *See Ramirez*, 594 U.S. at 425 ("The most obvious are traditional tangible harms, such as physical harms and monetary harms. If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III.").

And, to the extent Mr. Kirk has demonstrated he was injured by the spreading of and inability to timely dispute an incomplete and inaccurate background check, the common-law tort of defamation offers a suitable analogue. *See Maddox v. Bank of New York Mellon Trust Co., N.A.*, 19 F.4th 58, 65 (2d Cir. 2021) ("This type of reputational harm—i.e., one that flows from the publication of false information—is well established as actionable at common law."); *see also* Restatement (Second) of Torts § 558 (1977) ("To create liability for defamation there must be: (a) a false and defamatory statement[.]"). That Mr. Kirk's background check did not contain

false information, but was only inaccurate because it omitted his pardon, does not make the common-law tort of defamation incomparable. In *TransUnion v. Ramirez*, for example, the Supreme Court determined that information that was not "technically false," but that was "misleading" bore "a sufficiently close relationship to the harm from a false and defamatory statement." *Ramirez*, 594 U.S. at 433; *see also id.* (noting that the historical analogue need not be "an exact duplicate" of the injury alleged).

Mr. Kirk has thus alleged that he individually has suffered a concrete injury for the purposes of standing.

Beyond his own harm, however, Mr. Kirk argues that a concrete injury exists "even where the information [in the background check report] is accurate." Reply at 4.

The Court disagrees.

The analysis of concrete injury "hinges" on the existence of a common-law or historical analogue. *Maddox*, 19 F.4th at 63. The most direct common-law comparator, defamation, requires some level of falsity or fabrication. *See* Restatement (Second) of Torts § 558 (1977) ("To create liability for defamation there must be: (a) a false and defamatory statement[.]"). Mr. Kirk points to no analogue for the authorized transmission of accurate information.[1] Thus, Mr.

---

[1]     Although Mr. Kirk does not advocate explicitly for any common-law or historical analogue, he cites *Long v. Southeastern Pennsylvania Transportation Authority* for the proposition that "it has long been recognized that the protections of FCRA section 1681b(b)(3) apply even where information is accurate." Reply at 4. In *Long*, the Third Circuit highlighted "privacy torts [that] represent interference with an individual's ability to control his personal information" as comparable to a violation of Section 1681b(b)(3) similar to what Mr. Kirk alleges here. *Long*, 903 F.3d at 324. Specifically, the Court in *Long* cited "(b) appropriation of the other's name or likeness, ... (c) unreasonable publicity given to the other's private life, ... or (d) publicity that unreasonably places the other in a false light before the public ...." *Id.* (quoting Restatement (Second) of Torts § 652A(2)(a)-(d) (1977)). While the alleged harm "does not require an exact duplicate in American history and tradition," *Ramirez*, 594 U.S. at 433, cases published since *Long* have made clear that the historically recognized injury and the modern injury must be sufficiently close. *See id.* at 434 (finding that alleged injury of false information in a non-public database was not analogous to defamation because "[p]ublication is 'essential to liability'").

Here, the torts cited by *Long* do not capture the injuries suggested by Mr. Kirk. First, there is no allegation that American Cruise Lines "appropriated" the likeness of any proposed class members in this

Kirk has not demonstrated a concrete injury based on the failure to disclose completely accurate background check reports pre-adverse action. *Cf. Ramirez*, 594 U.S. at 434 ("And there is 'no historical or common-law analog where the mere existence of inaccurate information, absent dissemination, amounts to concrete injury.' . . . [T]he mere existence of inaccurate information in a database is insufficient to confer Article III standing." (quoting *Owner-Operator Independent Drivers Assoc., Inc. v. United States Dept. of Transp.*, 879 F.3d 339, 344–45 (D.C. Cir. 2018))).

Indeed, in *Schumacher v. SC Data Center, Inc.*, 33 F.4th 504 (8th Cir. 2022), the plaintiff challenged the failure of a potential employer to provide her background check report when that report contained only accurate information. *Id.* at 511–512. There, the plaintiff may have demonstrated an "injury in law, but not an injury in fact" because there was no support that she had a right to discuss "accurate but negative" information with a potential employer. *Id.*

As to *Long v. Southeastern Pennsylvania Transportation Authority* and *Robertson v. Allied Solutions*, two cases cited by Mr. Kirk, both cases were decided before *TransUnion v. Ramirez*, the "touchstone for determining . . . concrete injury." *Bohnak*, 79 F.4th at 283. Moreover, in *Robertson*, the Seventh Circuit did not focus on whether the injury claimed had a "close relationship" with a common-law or historical analogue, which both the Supreme Court in *Ramirez* and Second Circuit case law require this Court to do now. *Compare Robertson*, 902 F.3d at 695–96 (focusing on a statutory interpretation of the FCRA and whether "the Act . . . link[s] accuracy concerns and disclosure obligations"), *with Maddox*, 19 F.4th at 63 ("The

---

case. Second, Mr. Kirk does not allege that the disclosure of the information itself caused harm—*e.g.*, that the disclosure was unauthorized or that proposed class members were forced to make any disclosures. *Cf. Bohnak*, 79 F.4th at 285–86 (finding standing based on analogue of "public disclosure of private facts" where plaintiff's social security number and private information were exposed to an "unauthorized malevolent actor"); *Davis v. Fed. Elec.Comm'n*, 554 U.S. 724 (2008) (finding Plaintiff had standing when he was "forced . . . to disclose" private information). Third, the tort of publicity placing person in a false light still requires "that the matter published concerning the plaintiff is not true." Restatement (Second) of Torts § 652E, Comment a. (1977).

[Supreme] Court explained that whether a harm qualifies as 'concrete' hinges on 'whether the alleged injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." (quoting *Ramirez*, 594 U.S. at 424)). Similarly, in *Long*, while the Third Circuit considered the analogue of common-law privacy rights, it concluded that the plaintiffs had standing to challenge the alleged nondisclosure of accurate reports primarily because of "the language and purpose of § 1681b(b)(3)." 903 F.3d at 324.

Mr., Kirk also alleges that all members of the proposed class have an "informational injury" because "Plaintiff and all other class members lost the chance to preserve the job opportunity they had been offered conditionally by explaining or contesting the contents of the reports Defendant relied on to take adverse action, and were outright deprived of the reports themselves when they needed them – before the decision not to hire took place." Reply at 7.

But, to successfully allege an informational injury, plaintiffs must allege "downstream consequences from failing to receive the required information." *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) (quoting *Ramirez*, 594 U.S. at 442). These downstream consequences must go beyond allegations of injuries that "*could* result" from the failure to provide the information. *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 310 (2d Cir. 2024). And a plaintiff cannot rely on mere "speculation and conjecture" as to how the lack of information harmed him. *Id.* at 309 (quoting *Quieju v. La Jugueria Inc.*, No. 23-cv-264 (BMC), 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023)). Instead, plaintiffs must provide support for a "plausible 'theory as to *how* he was injured by [the] defendants' failure to provide the required documents." *Id.* (quoting *Quieju*, 2023 WL 3073518, at *2).

For example, in *Guthrie v. Rainbow Fencing Inc.*, the Second Circuit distinguished between complaints where the plaintiffs had "adequately alleged that the lack of accurate [wage] notices caused a downstream effect" and those that "failed to identify a concrete downstream harm [plaintiffs] suffered as a result of the statutory violation." *Id.* at 308 n.4, 311; *compare id.* 308 n.4 ("Kaur plausibly alleges that her wage statements showed fewer hours than what she actually worked, which prevented her from determining and seeking payment for the precise amount of her unpaid wages and she was thus harmed by being deprived of her income for longer than she would have been had she been able to timely raise her underpayment earlier. This financial harm is a tangible downstream consequence of the failure to receive required information." (quoting *Kaur v. Natasha Accessories Ltd.*, No. 23-CV-6948, 2024 WL 3429129, at *4 (S.D.N.Y. July 16, 2024)), *with id.* at 311 ("We recognize that the failure of an employer to provide the wage notices and wage statements that § 195 requires may result in various harms to an employee. But Guthrie has not plausibly alleged that RFI's failure to provide the wage notices and wage statements in this case caused him to suffer any of those harms.").

Here, Mr. Kirk, the only named Plaintiff, has alleged facts related only to his inability to challenge his inaccurate background report before hiring. Specifically, Mr. Kirk alleges

> Sterling responded the same day with an email that contained a link that allowed him to access his consumer report for the first time. It was at this time that Mr. Kirk discovered Sterling's failure to report his gubernatorial pardon and the inaccurate information in his report. Defendant willfully and negligently failed to comply with the FCRA's mandatory pre-adverse action notification requirement, and failed to provide a copy of the inaccurate background report it obtained from Sterling before taking adverse action against Mr. Kirk. As a result, Mr. Kirk was denied the opportunity to discuss the contents of the report and dispute the inaccurate information with Sterling before Defendant took an adverse employment action against him.

Compl. ¶ 39–41.

There are no factual allegations to support the proposition that other class members experienced harm on the basis of not receiving an accurate background check report, or not receiving the FCRA notice.  Mr. Kirk provides only unsupported assertions that some class members may have been unable to "make timely and informed decisions about their employment options" or "discuss the contents of reports with Defendant." Reply at 9; *cf. Guthrie*, 113 F.4th at 311 ("But Guthrie 'fails to link the general harms an employee *might* experience to any harms that Mr. Guthrie *did*, in fact, experience.' Without plausible allegations that he suffered a concrete injury because of RFI's failure to provide the required notices and statements, Guthrie lacks standing to sue for that statutory violation." (citations omitted) (emphasis in original)).

For the same reason, Mr. Kirk has not demonstrated any injury related to the alleged lack of notice of his FCRA rights. The Complaint contains no factual allegations related to harm stemming from not having this notice. If anything, the record demonstrates that, despite this lack of notice, Mr. Kirk was able to fully exercise his rights under the FCRA by successfully challenging the lack of pardon on his credit report and timely filing this lawsuit. Thus, there is no "informational injury" insofar as the claim is based on the alleged failure to provide the notice of rights under the FCRA or failure to provide accurate background check reports. *See Ramirez*, 594 U.S. at 427–28 ("An uninjured plaintiff who sues in those circumstances is, by definition, not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's 'compliance with regulatory law' (and, of course, to obtain some money via the statutory damages). Those are not grounds for Article III standing." (citations omitted)); *see id.* at 442 ("An asserted informational injury that causes no adverse effects cannot satisfy Article III." (internal quotation marks and citation omitted)).

14

Accordingly, only Mr. Kirk and similarly situated potential class members who disputed their background check report and failed to receive that report before the adverse action have demonstrated a concrete injury.

### 2. Redress

American Cruise Lines argues that Mr. Kirk has no actual damages because he "cannot show that but for the Defendant's alleged FCRA violation his job offer would not have been rescinded." Memo. in Opp. at 15. American Cruise Lines also argues the Mr. Kirk cannot receive punitive or statutory damages because he cannot demonstrate that the noncompliance was "willful" as required by the statute because their reading of the statute was objectively reasonable. *Id.* at 18–22.

Mr. Kirk argues that he "lost the chance to preserve the job opportunity . . . by explaining or contesting the contents of the report[]." Reply at 7. And he states that the question of willfulness is "a common and predominating question" for the class as a whole. Reply at 15.

The Court agrees.

As to actual damages, the discovery conducted thus far leaves open the question of how significantly, if at all, the termination of Mr. Kirk's job offer was caused by the inaccurate background check report. Mr. Kirk posits that the inaccurate report could have affected whether he was hired due to the "case-by-case" consideration of background check reports. Reply at 9; *see also* Memo. in Opp. at 5. ("Defendant review candidates for employment on a case-by-case basis, considering the entirety of the candidate."). And, while American Cruise Lines suggests concerns with Mr. Kirk's application not affected by the omitted pardon, such as his suspended driver's license, they also state that they may hire individuals with a suspended license if "business needs make it necessary." Memo. in Opp. at 5. More importantly, they point to no

evidence entirely foreclosing the possibility that Mr. Kirk's employment was affected by the error on the background check report.

As a result, this issue remains a question of fact better determined at summary judgment, or trial. *Cf. Wentworth v. Metrodata Services, Inc.*, No. 1:17-cv-594, 2021 WL 516283, at *8–9 (W.D.N.Y. Feb. 11, 2021) ("Defendant's assertion that Plaintiff cannot provide evidence of lost wages derives from its argument about the cause of Plaintiff's harm. . . . However, the court has previously determined that the proximate cause of the revocation of Plaintiff's employment offer is a disputed material fact. Consequently, Defendant cannot establish as a matter of law that there is no causal connection between Plaintiff's lost wages and a FCRA violation by Defendant, and Defendant is not entitled to summary judgment on Plaintiff's lost wages claim on this basis.").

As to the willfulness of American Cruise Lines' alleged violation of the FCRA, a defendant's violation may not be considered willful or reckless if their "reading of the statute . . . was not 'objectively unreasonable.'" *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007). This inquiry is an objective one, and evidence of subjective bad faith cannot create liability "in the face of objectively reasonable interpretations." *Shimon v. Equifax Information Services LLC*, 994 F.3d 88, 94 (2d Cir. 2021).

Here, Section 1681b(b)(3)(a) provides that "before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates— (i) a copy of the report." 15 U.S.C. § 1681b(b)(3)(a). American Cruise Lines states that it "provided" the report because Sterling's "online system allowed candidates to . . . download or request a copy of the completed report." Memo. in Opp. at 8–9.

But the meaning of "download or request a copy of the completed report" is not clear. American Cruise Lines' corporate representative, Joseph Pascarella, stated only that the applicant would have had to "sign[] off on how to get access to the report in the first place" when agreeing to the background check. Exhibit 1, Deposition of Joseph Pascarella at 61:3–4, ECF No. 58–3 (Dec. 13, 2024). And, if a job applicant had to affirmatively "request" their background check report from Sterling, it may not be objectively reasonable for American Cruise Lines to believe that this fulfilled its statutory duty.

Indeed, the duty to provide the background check report is on "the person intending to take such adverse action." 15 U.S.C. § 1681b(b)(3)(a). Under the FCRA, a "person" is an "individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b). The "person intending to take adverse action" in this case is American Cruise Lines, not Sterling. Thus, American Cruise Lines' interpretation of the statute may not be "objectively reasonable," and the possibility of damages based on a "willful" violation remains, at least for now. [2]

Accordingly, Mr. Kirk has demonstrated the possibility for redress at this stage. Thus, Mr. Kirk and all similarly situated proposed class members who had a disputed background check report and failed to receive that report prior to the adverse action have standing to pursue their claim.

## B. Class Definition

---

[2]      To be clear, in not definitively resolving this issue, the Court is not foreclosing its consideration again in the summary judgment context. *Cf. Shimon*, 994 F.3d at 94 (recognizing at the summary judgment stage that "[i]t is an objectively reasonable reading of these provisions to exclude from 'furnisher' and "sources' a contractor such as LexisNexis working on the reporting agency's behalf when the information in question is contained in a particular set of files, the consumer reporting agency identified the court and its files as the 'furnisher' or 'source' of the information, and the function of the undisclosed contractor was to check those files to determine the accuracy of the report").

A court may "carve out a narrower class from an overbroad class proposed in the Complaint." *Vincent v. Money Store*, 304 F.R.D. 446, 453 (S.D.N.Y. 2015) (citing *Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*, 993 F.2d 11, 14 (2d Cir. 1993)); *see also Ruzhinskaya v. Healthport Tech., LLC*, 311 F.R.D. 87, 108 (S.D.N.Y. 2015) ("The Court has authority *sua sponte* to modify a proposed class definition.").

Mr. Kirk seeks to define the class as:

> All natural persons residing within the United States and its Territories about whom, (i) beginning five (5) years prior to the filing of this Complaint and continuing through the conclusion of this action, (ii) were the subject of a consumer report used by Defendant for employment purposes, (iii) were the subject of an adverse employment action by Defendant, and (iv) were not provided with a copy of the report and/or a written summary of their rights under the FCRA at least five (5) business days prior to the adverse action.

Memo. in Supp. at 9.

American Cruise Lines argues that the proposed class definition is improper because (1) a two-year statute of limitation applies so the class cannot include individuals five years prior to the filing of the Complaint; (2) there is no requirement under the FCRA for a notice to be provided five days before the adverse action; and (3) class members must have had an inaccuracy on their background check reports. *Id.* at 7–9.

The Court will assess each argument in turn.

### 1. The Statute of Limitations Period

Under the FCRA, an action can be brought "not later than the earlier of (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p.

American Cruise Lines argues that the alleged violation "would have been readily apparent to any class member at the time they received notice from Defendant that their offer of employment had been rescinded. Memo. in Opp. at 8.

In response, Mr. Kirk argues that the five-year statute of limitation should apply because "Class members had no reason to know a violation of their rights under 1681b(b)(3) occurred." Reply at 10. He states that "[w]ithout knowledge that Defendant had ran a background report about them, or more or more importantly that it used that report to make a termination decision, the Class members could not have discovered facts constituting a violation of their rights under section 1681b(b)(3)." *Id.* at 11.

The Court disagrees.

In an FCRA case, "[t]he date of discovery by the plaintiff is the date when 'that party possesses all of the material facts necessary to identify a violation.'" *Manes v. JPMorgan Chase Bank, N.A.*, No. 20-cv-11059 (VEC), 2022 WL 671631, at *2 (S.D.N.Y. Mar. 7, 2022) (quoting *Trans Union LLC v. Lindor*, 393 F. App'x 786, 788 (2d Cir. 2010)).

Contrary to Mr. Kirk's argument now, there is no allegation in the Complaint, or anywhere else, that Mr. Kirk or the proposed class members were "[w]ithout knowledge that Defendant had run a background report about them," or that they were unaware that the report from the background check was used in the adverse action. The Complaint plainly alleges that Mr. Kirk was given "a conditional offer of employment contingent on passing a background check." Compl. ¶ 7. Mr. Kirk also alleges that the adverse decision letter explicitly notified him that the adverse action was based on the results of the background check. *See id.* ¶ 33 (quoting the letter from American Cruise Lines as stating: "Thank you for your interest in American Cruise Lines. We appreciate you taking the time to interview with us. This offer was contingent

on the results of your pre-employment background check and drug test. After reviewing your

results, we have decided to pursue another candidate for the position and will no longer be

extending an offer to you.")

And, as explained in Mr. Kirk's motion for class certification, the discovery conducted

thus far confirms these allegations. Mr. Kirk states that applicants themselves must initiate the

background check. *See* Memo. in Supp. at 5 ("Once a candidate accepts their employment offer,

ACL sends the applicant an email through its applicant tracking system, called Paycor, to initiate

the background check.  This email, which comes directly from Sterling, asks the candidate to

input their personal information directly into Sterling's website, which then allows Sterling to

conduct its background check." (citations omitted)). Mr. Kirk also states that all applicants who

have had their offers rescinded based on a background check are sent a "template rejection letter

informing them that ACL had rescinded its job offer due to information in a background check."

*Id.* at 6. Thus, based on the allegations in the Complaint, no proposed class members would be

unaware of the conducting of a background check, or of an adverse decision because of the

background report.

Moreover, even if potential class members did not know their rights may have been

violated, because they were not given the pre-adverse action FCRA notice of their rights, this

"ignorance of [one's] legal rights" does not warrant a longer statute of limitation. *United States

v. Kubrick*, 444 U.S. 111, 122 (1979); *see, e.g.*, *Lindor v. Trans Union LLC*, No. 08 Civ. 5143

(BMC), 2009 WL 10700261, at *7–8 (E.D.N.Y. Sept. 16, 2009) (rejecting plaintiff's "contention

that it is not just her knowledge of the facts that matter; rather, according to plaintiff, she had to

have actual knowledge that those facts constituted a violation of FCRA"), *aff'd*, 393 F. App'x

789 (2d Cir. 2010).

Mr. Kirk and proposed class members thus possessed all of the material facts to identify a violation of Section 1681b(b)(3), when they received the adverse decision letter stating that their offer had been rescinded on the basis of the background check report, even if they did not receive a copy of that report or notice of their FCRA rights before.

Accordingly, the Court will not certify a class definition based on the five-year statute of limitations period.

### 2. The Five-Day Requirement

American Cruise Lines argues that the proposed requirement that class members did not receive their background check report "at least five (5) business days prior to the adverse action," Memo. in Supp. at 9, unnecessarily narrows the proposed class because "the plain language of § 1861b(b)(3)(A) does not prescribe this five-day requirement, nor does there appear to be any binding authority regarding the same." Memo. in Opp. at 9.

In reply, Mr. Kirk argues that "the fundamental requirement is that the notice allows sufficient time for the consumer to respond before the employer acts." Reply at 12. He also states that "Defendant systematically violated FCRA section 1681b(b)(3) by failing to give employees *any time*, let alone a reasonable amount, to review and contest their background checks before rescinding job offers." *Id.* And he notes that "[t]his case does not hinge on whether the employer waited a reasonable time between a pre-adverse action notice and taking adverse action." *Id.* at 13.

The Court disagrees.

This case "does not hinge on" whether American Cruise Lines provided a copy of the background check report a specific number of days in advance of taking adverse action, Instead,

Mr. Kirk contends primarily that American Cruise Lines failed to make the required disclosures at "*any time.*" Reply at 12 (emphasis in original).

As a result, there is no reason to require in the class definition that American Cruise Lines provided a copy of the background check report at least five days before taking adverse action. *See, e.g.*, *Millien v. Madison Square Garden Co.*, No. 17-cv-4000 (AJN), 2020 WL 4572678, at *3 (S.D.N.Y. Aug. 7, 2020) ("The FCRA Class is defined as 'individuals who were denied employment with MSG based on the content of his or her Background Check Report from April 26, 2015 through the date of Preliminary Approval of the Settlement.'").

Accordingly, the Court will not certify a class with the five-day requirement for disclosure at this time.

### 3.  Inaccuracy on Report

American Cruise Lines argues that "[i]n the absence of a purported inaccuracy in a candidate's background report, Defendant's alleged FCRA violations would have no effect on the outcome of its hiring decision." Memo. in Opp. at 10.

In reply, Mr. Kirk argues that he "and the class members all suffered the same concrete injury: the deprivation of information to which they have a right under the FCRA." Reply at 14. Mr. Kirk additionally argues that "how [proposed class members] would have used timely disclosed information . . . is unknowable because Defendant deprived them of that opportunity." *Id.*

The Court disagrees.

While it is not necessary for "each member of a class submit evidence of personal standing[,] . . . no class may be certified that contains members lacking Article III standing." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263–64 (2d Cir. 2006). Thus, "[e]ven if one of the

named plaintiffs has established standing on behalf of the entire class, the reviewing court must still examine the class definition" with an eye towards standing. *Tomassini v. FCA US LLC*, 326 F.R.D. 375, 385 (N.D.N.Y. 2018).

As the Court has previously explained, a concrete harm has not been adequately alleged for class members who were not provided with a background check report prior to the termination of their job offers, if the accuracy of that report was never disputed.

Mr. Kirk argues that "[i]n an informational injury [case] like this it makes no sense to require class members to prove specific actions they would have taken based on information they never received." Reply at 14–15. But, while proposed class members may not need to prove what actions they would have taken, they at least "'must plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief.'" *Guthrie*, 113 F.4th at 311 (quoting *Maddox*, 19 F.4th at 64)); *see also Ramirez*, 594 U.S. at 440 ("The plaintiffs put forth no evidence, moreover, that the plaintiffs would have tried to correct their credit files—and thereby prevented dissemination of a misleading report —had they been sent the information in the proper format."). Here, Mr. Kirk, the sole named plaintiff, has only alleged allegations of harm related to an inaccurate background check report. There are no factual allegations, however, to support the contention that even some of the proposed class members were concretely harmed by accurate background check reports.

Furthermore, to the extent Mr. Kirk argues that the distinction between inaccurate and accurate background check reports is unworkable in the class definition because proposed class members would have been wholly unable to identify potential errors in their background reports, the allegations in the Complaint and discovery conducted thus far do not demonstrate that applicants were unable to obtain their background report eventually or to challenge those reports.

23

Indeed, Mr. Kirk received a notice that his background check was completed, and then was able to obtain and challenge that report. *See, e.g.*, Compl. ¶ 39 ("Sterling responded the same day with an email that contained a link that allowed him to access his consumer report for the first time. It was at this time that Mr. Kirk discovered Sterling's failure to report his gubernatorial pardon and the inaccurate information in his report."); Memo. in Opp. at 4 ("Plaintiff received an email from Sterling on March 29, 2023 at 9:16am EST stating that his background report had been completed. In a separate secure message, he received a copy of his background report from Sterling. Plaintiff initiated a dispute with Sterling on March 31, 2023 stating that the background report did not include a pardon for his 2011 conviction and alleging that as a result he was denied employment." (citing Report Complete Email, Exhibit 13, ECF No. 61-3 (Jan. 31, 2025); Sterling Secure Message to Kirk, Exhibit 14, ECF No. 61-3 (Jan. 31, 2025); Report Dispute Email, Exhibit 15, ECF No. 15-3 (Jan. 31, 2025)). As a result, while applicants may have been unable to dispute an inaccurate or incomplete background check report before the termination of their job offers, the applicants were not prevented from ever identifying an inaccuracy.

Accordingly, the Court will not certify a class that includes members who did not dispute the accuracy of their background check reports, as the allegations do not support a finding that those members have suffered a concrete injury, and they therefore lack standing.

### 4.  Modification of Class Definition

"When confronted with an overly broad class definition, a court has the discretion to modify the class definition." *Tomassini*, 326 F.R.D. at 386. This Ruling and Order, however, would require a significant modification to the class definition: one that would likely materially alter the Court's analysis of the Rule 23 requirements—particularly, numerosity, whether

common questions of law and fact predominate, and whether a class action is superior to other means of adjudication.

Accordingly, rather than use its discretion to modify the class the Court will deny the motion for class certification. *See, e.g.*, *Tomassini*, 326 F.R.D. at 387 ("In this case, however, there is no obvious modification to the class definition that would solve Plaintiff's standing problems without introducing other problems fatal to Plaintiff's motion. . . . Accordingly, Plaintiff's motion for class certification is denied. Even if the Court were to follow the lead of other courts and consider the standing issue as part of its Rule 23 analysis, Plaintiff's motion for class certification would be denied."); *Kempner v. Town of Greenwich*, 249 F. R.D. 15, 18 (D. Conn. 2008) ("However, even were the court to redefine the proposed class so as to eliminate those members without standing under Article III, the plaintiffs' proposed class could not be certified because the plaintiffs have failed to establish that the proposed class satisfies the numerosity requirement. . . . For the forgoing reasons, the Plaintiffs' Motion for Class Certification and Appointment of Class Counsel is DENIED.")

## IV.    CONCLUSION

For the reasons explained above, the motion for class certification is **DENIED.**

To the extent Mr. Kirk can cure the deficiencies identified in this Ruling and Order, or wishes to move for certification with a modified class definition, he may file a renewed motion for class certification by **August 1, 2025**.

**SO ORDERED** at New Haven, Connecticut, this 18th day of July, 2025.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge